1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RODERICK LIPSEY,                          )   Case No. 1:08-cv-01726 JLT (PC)
                                               )
12            Plaintiff,                        )   ORDER GRANTING DEFENDANT'S
                                               )   MOTION FOR SUMMARY JUDGMENT
13       vs.                                   )
                                               )   (Doc. 29)
14   ARNOLD SCHWARZENEGGER, et al.,            )
                                               )
15            Defendants.                       )
                                               )
16   _____ )

17            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C.

18   § 1983.  Plaintiff's sole remaining claim is that on one occasion, Defendant Edward Granillo served him

19   "a plate of contaminated food with what appeared to be dirt, rocks, and other substances." (Doc. 12 at

20   8)

21            Defendant filed his motion for summary judgment on March 14, 2011.  (Doc. 29) Plaintiff has

22   failed to respond to motion in any fashion despite the Court's order issued on April 18, 2011, requiring

23   Plaintiff to file an opposition to the motion or a notice of non-opposition. (Doc. 33)

24            For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.

25   **I.       BACKGROUND**

26            **A.       Factual Background**

27            Plaintiff alleges that Defendant Granillo is a correctional officer at CCI which is the prison where

28   Plaintiff was housed on July 9, 2006.  (Doc. 12 at 5, 8)  On this day, Plaintiff alleges, "C/O Grannillo

1

1  [sic], served plaintiff's dinner at about 5:00 PM.  As plaintiff was eating he became very ill with a

2  swollen throat, and sick att he stomach.  I discovered that C/O Granillo, gave me a plate of contaminated

3  food with what appeared to be dirt, rocks, and other substances."  Id. at 8.

4         Granillo's evidence demonstrates that at CCI, the food is prepared by inmates in a central kitchen

5  under the supervision of CCI staff. (UFM[1] 4, 5, 6)  Once the food is prepared, inmates transport it in bulk

6  to the various housing units.  (UFM 7, 8, 9)  Correctional officers meet the inmates and take the bulk

7  food into the dining halls.  (UFM 10, 71) Seven correctional officers form an assembly line, known as

8  a "steam line," and begin assembling the trays of food with each officer placing one portion of one food

9  item on each tray.  (UFM 13,  14, 17, 18, 21)  During this time, if any contaminated, spoiled or

10  improperly prepared food is found or items of contraband are found in the food, an officer contacts the

11  kitchen immediately and obtains substitute food.  (UFM 15, 16)

12         As the trays are filled, each is covered with a lid and placed on one of four food carts.  (UFM 19,

13  22, 23) No trays of food are prepared for any particular inmate, the trays are not labeled for any particular

14  inmate or housing unit and they are not placed on any particular food cart.  (UFM 20, 22, 23, 51) Once

15  all four food carts are full of trays, each three-man team of housing unit correctional officers takes two

16  food carts to their housing unit.  (UFM 24) There, each of the housing unit correctional officers begins

17  distributing the food trays to the inmates by removing six to ten trays at a time from the food cart and

18  carrying them to the cells.  (UFM 24, 25, 71)

19         At each cell, the housing unit officer, provides one or two trays of food, depending upon whether

20  the cell houses one or two inmates.  (UFM 26, 28, 29, 30) The trays are passed to the inmates through

21  the "food port" located in the cell door.  Id.  Once the food port is opened, the officer removes the lid

22  from each tray of food and passes the tray through the port.  (UFM 27) In a two-man cell, the inmates

23  decide which tray of food each will eat.  (UFM 52)

24         While handling the food and food trays, officers are required to wear plastic gloves and to cover

25  their hair.  (UFM 33, 34)  Likewise, they are required to wash their hands before beginning these tasks.

26  (UFM 32)

27         On July 9, 2006, Defendant Granillo was a housing officer in the unit where Plaintiff was housed.

28

_____

[1] "UMF" refers to the separate statement of undisputed facts submitted by Defendant.  (Doc. 29, Ex 1)

(UFM 35) Along with six other officers, Granillo assisted on the steam line to prepare the food trays and then distributed the trays to the inmates.  (UFM 36, 43, 50) At no time did he see any contamination, including rocks, dirt or other substances in the food, he did not place any rocks, dirt or other substances in the food and he did not see anyone else contaminate the food.  (UFM 37, 38, 39, 40, 41, 42, 46, 47, 48, 49) After the inmates were finished eating, Granillo assisted in retrieving the food trays.  (UFM 53, 54) At no time during this process did any inmate complain to Granillo that his food was contaminated or that he needed medical attention.  Id.

Inmate Juan Thornton was Plaintiff's cellmate on from April 2006 through January 2007. (UFM 56) Thornton testified that on one occasion, Plaintiff found a rock, the size of a fingernail in his meal. (UFM 57, 58, 59, 63)  Thornton testified that Plaintiff complained about the rock in his food to a staff member.  (UFM 66)

**B.     Procedural History**

Plaintiff filed his original complaint on November 10, 2008.  (Doc. 1.)  On February 12, 2009, the Court screened the complaint and found it did not state a cognizable claim.  (Doc. 9.)  The Court granted Plaintiff leave to amend his complaint and on April 28, 2009, Plaintiff filed his First Amended Complaint.  (Doc. 12)

Once again, the Court screened the complaint and found that the only cognizable claim was the one described above against Defendant Granillo.  (Doc. 13)  The Court dismissed all other claims and defendants.  (Doc. 13, 14.)  Defendant filed his answer to the First Amended Complaint on April 30, 2010. (Doc. 53.)

On March 14, 2011, Defendant filed the instant motion for summary judgment. (Doc. 29) When Plaintiff failed to file any response to the motion, on April 18, 2011, the Court ordered Plaintiff to file his opposition or notice of non-opposition within 30 days.  (Doc. 33) Nonetheless, Plaintiff has failed to take either action.

**II.     LEGAL STANDARDS**

**A.     Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor."  FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment.  Stefanchik, 559 F.3d at 929.  Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence."  Soremekun, 509 F.3d at 984.  Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor."  Anderson, 477 U.S. at 255.  See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to

4

1  produce a factual predicate from which the inference may justifiably be drawn.  Richards v. Nielsen

2  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

3    **B.    Eighth Amendment**

4    Plaintiff may proceed under 42 U.S.C. § 1983 against a person acting under color of state law

5  who has violated rights guaranteed by the United States Constitution. Buckley v. City of Redding, 66

6  F.3d 188, 190 (9th Cir. 1995); Demery v. Kupperman, 735 F.2d 1139, 1146 (9th Cir. 1984). To prevail

7  on such a claim, Plaintiff must prove that he suffered a specific injury as a result of Defendant's specific

8  conduct. See Rizzo v. Goode, 423 U.S. 362, 371-372 (1976).

9    To state a claim against a prison official under the Eighth Amendment, a plaintiff must establish

10  that the deprivation at issue, according to an objective standard, is sufficiently serious and the defendant,

11  subjectively, had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

12  The Court will find an objectively sufficiently serious deprivation if it resulted in "the denial of the

13  minimal civilized measure of life's necessities." Id.  "[E]xtreme deprivations are required to make out

14  a conditions-of-confinement claim . . . [R]outine discomfort is 'part of the penalty that criminal

15  offenders pay for their offenses against society . . .'" Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992)

16  quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

17    "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain

18  health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.

19  1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while

20  unpleasant, does not amount to a constitutional deprivation." Id. See also George v. King, 837 F.2d 705,

21  707 (5th Cir. 1988) ("[A] single incident of unintended food poisoning, whether suffered by one or many

22  prisoners at an institution, does not constitute a violation of the constitutional rights of the affected

23  prisoners."); Islam v. Jackson, 782 F.Supp. 1111, 1114-15 (E.D. VA 1992) (serving one meal

24  contaminated with maggots and meals under unsanitary conditions for thirteen days was not cruel and

25  unusual punishment, even though inmate suffered symptoms of food poisoning on one occasion);

26  Bennett v. Misner, 2004 U.S. Dist. LEXIS 19568* at 63 (D. Or., Sept. 17, 2004) ("Neither isolated

27  instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated

28  with maggots are sufficiently serious to constitute an Eighth Amendment violation.")

The defendant acts with a sufficiently culpable state of mind under the subjective standard when he displays deliberate indifference to the plaintiff's health or safety. Farmer, 511 U.S. at 834.   Thus, a defendant acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

## III.    DISCUSSION

Though Plaintiff alleges that Granillo gave him a tray of food that was contaminated and made him sick on one occasion, he provides no evidence that Granillo contaminated the food or was aware that the food was contaminated.  (Doc. 12 at 8) In fact, Plaintiff does not even allege that Granillo was the source of the contamination or was aware of it.  Id.

To the contrary, Granillo provides evidence that he did not contaminate Plaintiff's food and was never aware of any contamination in Plaintiff's food.  (UFM 36,  37, 38, 39, 40, 41, 42, 43, 46, 47, 48, 49, 50, 53, 54)  Moreover, the evidence demonstrates that it is nearly impossible for an officer to purposely contaminate the food of a particular inmate when the inmate shares a cell.  (UFM 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 51, 52, 71)

Accordingly, because the undisputed evidence before the Court establishes that Plaintiff did not suffer a constitutional deprivation and Defendant did not act with deliberate indifference, the Court concludes that Defendant is entitled to summary judgment in his favor.

## IV.    CONCLUSION

For all the reasons set forth above, it is **HEREBY ORDERED** that:

1.    Defendant's March 14, 2011, motion for summary judgment (Doc. 29) is **GRANTED**.

2.    The Clerk of the Court **SHALL** enter judgment and close this case.

IT IS SO ORDERED.

Dated:   **June 3, 2011**                                      **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE

6